IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>    v.<br><br>JOSHUA HOWLAND, and<br>RYAN NEAL MONTGOMERY,<br><br>          Defendants. | Case No. 5:20-cr-06007-DGK |

**UNITED STATES' NOTICE OF ITS INTENT TO INTRODUCE EVIDENCE
UNDER FEDERAL RULES OF EVIDENCE 414 AND 404(B)**

To prove the charges in the Second Superseding Indictment at trial, the United States may seek to introduce in its case-in-chief the evidence described below (the "Offered Evidence"). The United States believes that much of the Offered Evidence is intrinsic to the charges in the Second Superseding Indictment and thus can be admitted into evidence without reference to Federal Rules of Evidence 414 or 404(b). It is, however, also admissible under those rules. Therefore, out of an abundance of caution, it provides notice of its intent to introduce the Offered Evidence at trial.

    **I.**    **Background**

The United States has indicted the Defendants, Joshua Howland and Ryan Neal Mongomery, on charges relating to "Website A"—in particular, conspiracy to advertise, distribute, and receive child pornography in violation of in violation of 18 U.S.C. §§ 2251(d) and (e) and 2252A(a)(2) and (b)(1). Website A was dedicated to the advertisement, distribution, exchange, and availability of child pornography and the discussion of child sexual abuse. Its server and principal administrator were located in Kansas City, Missouri, within the Western District of Missouri. Website A operated over a particular computer network (the "Network") that was designed to mask the location and

identity of its users and the websites that operate over it. The United States will prove at trial that both Defendants were intimately involved as staff members and managers of Website A, that Defendant Montgomery used a particular alias on Website A ("Alias-1"), that Defendant Howland did as well ("Alias-2"), and that they took steps to ensure the smooth operation of the Website and to further the overall conspiracy.

II. **Legal Standards**

**Rule 414**. Federal Rule of Evidence 414(a) provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation." The Defendants are accused of "child molestation," which is a term of art under Rule 414. It includes criminal conduct under state or federal law involving "any conduct prohibited by 18 U.S.C. chapter 110," as well as "an attempt or conspiracy to engage in [such] conduct…" Fed. R. Evid. 414(d)(2). Conduct prohibited by Chapter 110 of Title 18 of the United States Code includes the offenses with which the Defendants have been charged. *See* 18 U.S.C. §§ 2251(d), (e); 2252A(a)(1) and (b)(2). It also includes any instance of advertising, distributing, receiving, transporting, accessing with intent to view, or possessing child pornography, or attempting or conspiring to do so. 18 U.S.C. §§ 2251(d), (e); 2252A(a)(1), (a)(2), (a)(5)(B), (b)(1), (b)(2).

Rule 414(a) allows the admission of other "child molestation" evidence and permits it to be "considered on any matter to which it is relevant." This includes "the defendant's propensity to commit such offenses." *United States v. Gabe*, 237 F.3d 954, 959 (8th Cir. 2001); *see also United States v. Furman*, 867 F.3d 981, 988 (8th Cir. 2017) ("Federal Rule of Evidence 414 is an exception to the general rule that evidence of past crimes may not be used to prove the character of a person in order to show action in conformity therewith.") (quoting *United States v. Bentley*, 561 F.3d 803, 814

2

(8th Cir. 2009)).  When a court analyzes whether evidence should be admitted under Rule 414, it "must first determine whether the evidence has probative value," and then "must next balance that probative value against the risk of unfair prejudice (and any other pertinent [Federal] Rule [of Evidence] 403 factor)."  *Gabe*, 237 F.3d at 959.  "Rule 414 evidence is probative when the prior bad acts were similar to those with which the defendant was charged."  *United States v. Coutentos*, 651 F.3d 809, 819 (8th Cir. 2011).  For example, the defendant in *United States v. Axsom* was charged with trafficking in child pornography, and the Eighth Circuit approved of the admission under Rule 414 of the defendant's prior acts of trafficking in child pornography.  761 F.3d 895, 897-98 (8th Cir. 2014).  The defendant had argued that the two incidents involved different file-sharing methods, different search terms, and were resolved differently (*i.e.*, one by plea and the other by trial).  The Court found that these supposed differences were not "convincing" and "not sufficient to show" that the district court erred in admitting evidence of the prior acts.  *Id.* at 898.

**Rule 404(b).**  Federal Rule of Evidence 404(b) allows the admission of evidence of "crimes, wrongs, or other acts," except when the evidence's purpose is solely to show a person's propensity to act in conformity with those bad acts.  For example, other acts evidence may be admissible to demonstrate a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  "Courts properly admit evidence under Rule 404(b) if (1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value."  *United States v. Drew*, 9 F.4th 718, 723 (8th Cir. 2021) (quoting *United States v. Smith*, 978 F.3d 613, 616 (8th Cir. 2020)).  The Eighth Circuit "will only reverse those admissions [of evidence under Rule 404(b)] when they clearly had no bearing on the case and were introduced solely to prove the defendant's propensity to commit

3

criminal acts." *Drew*, 9 F.4th at 722 (quoting *Smith*, 978 F.3d at 616) (cleaned up).

In *United States v. Fechner*, the defendant was charged with child pornography offenses, and at trial the government introduced evidence of the defendant's possession of "child erotica"—*i.e.*, sexualized images of minors that do not rise to the level of child pornography—under Rule 404(b). 952 F.3d 954, 960-61 (8th Cir. 2020). The Eighth Circuit upheld the admission of the evidence, holding in part that the defendant's possession of child erotica was "relevant to establish a motive for possessing child pornography and rebut claims of accident or mistake." *Id.* at 961. The Court held similarly in *United States v. Bartunek*, finding that evidence of life-sized child dolls in the defendant's bedroom was admissible under Rule 404(b), particularly in light of the defendant's denial that he engaged in the charged child pornography offenses. 969 F.3d 860, 862-63 (8th Cir. 2020). "The dolls were relevant to overcome the defense by showing Bartunek's motive for acquiring and distributing child pornography. That Bartunek derived gratification from the replicas of young children gave him a motive to possess and distribute child pornography." *Id.* at 863. The Court also rejected the defendant's claims that photos of the dolls were unfairly prejudicial, in part because "relevant evidence in a child pornography case often is disturbing, yet that alone can not be the reason to exclude the evidence." *Id.* (quoting *United States v. Evans*, 802 F.3d 942, 946 (8th Cir. 2015)) (cleaned up); *see also United States v. Stefanyuk*, 944 F.3d 761, 763-64 (8th Cir. 2019) (noting that "Rule 404(b) is a rule of inclusion…" and holding that previous child pornography conviction was admissible in subsequent child pornography prosecution under Rule 404(b) "to show motive, opportunity, knowledge, and absence of mistake").

**Intrinsic Evidence.** Rules 414 and 404(b), however, concern only evidence that is extrinsic. Evidence that is intrinsic may be admitted without resort to either Rule. Intrinsic evidence is evidence that "provides a total picture of the charged crime" or "tends logically to prove an element

4

of the crime charged." *United States v. Buckner*, 868 F.3d 684, 688 (8th Cir. 2017) (quoting *United States v. Young*, 753 F.3d 757, 770 (8th Cir. 2014)) (cleaned up). It includes "evidence of wrongful conduct other than the conduct at issue offered for the purpose of providing the context in which the charged crime occurred. It includes both evidence that is inextricably intertwined with the crime charged as well as evidence that merely completes the story or provides context to the charged crime. Intrinsic evidence need not be *necessary* to the jury's understanding of the issues to be admissible." *United States v. Guzman*, 926 F.3d 991, 1000 (8th Cir. 2019) (quoting *United States v. Campbell*, 764 F.3d 880, 888 (8th Cir. 2014), and *Young*, 753 F.3d at 770) (cleaned up; emphasis in original). Intrinsic evidence is still subject to Rule 403. *Id.* "District courts have broad discretion in admitting intrinsic evidence" and admission will be reversed on appeal "only if such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *Id.* (quoting *United States v. Thomas*, 760 F.3d 879, 883 (8th Cir. 2014)) (cleaned up).

### III. The Offered Evidence

#### a. Defendant Montgomery's Additional Involvement With Child Pornography and Child Pornography Websites

At trial, the United States intends to call witnesses from the FBI, possibly including FBI Special Agents David Backlund or Ashley Davis, who conducted a *Mirandized* interview with Defendant Montgomery, as well as FBI computer forensic examiner Amy Corrigan, who conducted computer forensic analyses of Defendant Montgomery's computer devices. Defendant Montgomery's statements during his interview and the forensic evidence on his devices make clear that he was involved with child pornography and child pornography websites beyond his involvement with Website A.

In particular, during his interview, Defendant Montgomery admitted that:

- He is attracted to girls around the age of 14 or 15;

5

- He has used Alias-1 on at least three other websites dedicated to child pornography in addition to Website A;

- He had been using the Network for more than a year;

- He maintains child pornography in folders on a laptop in his home, including depictions of children as young as eight years old and depictions of adults penetrating minors, and he estimated that he has approximately four gigabytes of child pornography;

- He visits child pornography sites online because he is sexually attracted by them;

- He has been viewing child pornography for approximately one and a half years;

- He learned from other internet websites that child pornography could be accessed over the Network;

- He began accessing child pornography sites on the Network because he was bored and was excited to see forbidden content, and he thought that by using the Network he would not be caught;

- He masturbated to child pornography several times per week.

In addition, computer forensic evidence on Defendant Montgomery's black HP laptop revealed over 47,000 images and videos of child pornography ("CP") (also referred to as child sexual abuse material or "CSAM"), and child exploitive (child erotica) or age-indeterminate material. Of those, approximately 1,514 were CP/CSAM images and videos depicting known and unknown infant or toddler-aged victims (with approximately 33 of those images/videos depicting bondage or violence) and approximately 7,093 were CP/CSAM images and videos depicting known and unknown prepubescent victims (with approximately 117 of those images/videos depicting bondage or violence). In addition, a large amount of child exploitive (child erotica) or age-indeterminate material was also located. Of those, approximately 859 images and videos depicted infant or toddler-aged victims (with approximately 534 of those images/videos depicting bondage or violence). The remaining approximately 36,000 images and videos were categorized as "other" and depicted known and unknown victims, a small number of which depicted bondage or violence.

In addition to these images and videos, which were identified by hash value, many other images and videos of children in sexual or erotic poses were located on Defendant Montgomery's HP laptop's two hard drives. On the Samsung 860 EVO 1TB M.2 drive, all of the above-described items came from a folder called "Etc." On the Crucial FCCT960M500SSD1 960GB SATA hard drive, all of the above-described items came from the Desktop, Documents and Downloads folders for the user account "Ryan." Another 400,000 additional files were contained in these folders and many of those, although not all, are possible child pornography or child exploitive (child erotica) material.

Defendant Montgomery's black HP laptop also contained Firefox history that showed visits to several dark web sites other than Website A with names indicating a focus on child exploitation. Dark web bookmarks for Website A and other sites indicating a focus on child exploitation were saved for the timeframe between March 25, 2019 and September 5, 2020. This HP laptop also contained a folder with non-pornographic photographs of young appearing girls that were taken with a Google Pixel 2 cell phone. Some of the pictures appeared to have been taken in-person, and others appeared to be photographs of posters depicting girls.

Defendant Montgomery's large silver iPad included information indicative of a history of browsing child pornography websites.

In addition, Defendant Montgomery's black Google G011A Pixel 2 cell phone was used to search for the term "teen meat" on June 15, 2020. Downloads from 4chan.org throughout 2018 were located that consisted mostly of adult pornography but included videos of females of indeterminate age. A web visit on January 5, 2018 to a Tor .onion URL directory was located in addition to web bookmarks for boards with names indicative of possible child pornography.

As noted above, the United States believes that some or all of this evidence is intrinsic to or inextricably intertwined with the charged conduct, or that it completes and provides context for the United States' presentation of evidence. Even if not, however, it demonstrates that Defendant Montgomery has committed numerous other crimes under 18 U.S.C. §§ 2251, 2252, and 2252A, and it will thus be admissible under Federal Rule of Evidence 414. It is also admissible under 404(b) because it shows Defendant Montgomery's knowledge of and familiarity with methods of accessing child pornography websites on the Network and obtaining child pornography. This, in turn, corroborates Defendant Montgomery's identity as an individual who was involved with those Websites. This evidence likewise demonstrates Defendant Montgomery's motive to traffic in child pornography and that doing so was his intent and not the result of a mistake or accident.

### b. Defendant Howland's "Spycam" Photos

As with Defendant Montgomery, the United States intends to call witnesses to testify as to evidence found that proves Defendant Howland involvement in the charged conspiracy. These witnesses may include FBI Special Agents Tracie Smith, Drew Steinmetz, or Jessica Diggons, FBI Task Force Officer David Albers, FBI computer forensic examiners Amy Corrigan or James McMillan, former Homeland Security Investigations ("HSI") Special Agent Michael McCullaugh, or Victim 1 or Victim 2.

One or more witnesses may testify that in April 2020, a user on Website A using Alias-2 made the following posts:

- A post consisting of the text "From my spy cam. Her name is [name of Victim 2]," along with a URL link and the tag "[jailbait]." (In the context of child sexual exploitation, "jailbait" refers to minors who are nearly 18.) An undercover FBI agent accessed the link, which redirected to an image of a young girl—Victim 2—topless in a room and holding what appears to be a towel or shirt. Victim 2's face is partially

8

Case 5:20-cr-06007-DGK   Document 212   Filed 09/28/23   Page 8 of 14

visible in the photo.

- Another post immediately after that refers to the "best friend" of a person known to Defendant Howland. This post was followed by another post consisting of a URL link and the tag "[jailbait]." An undercover FBI agent accessed the link, which redirected to another image of a topless young girl in what appears to be the same room. The girl's face is not visible in this second image, but her bodily features appear to be the same as Victim 2's.

- Another post slightly later that consisted of the text "And [Victim 2's] top heavy best friend," along with a URL link and the tag "[jailbait]." An undercover FBI agent accessed the link, which redirected to another image of a different girl—Victim 1—who is likewise topless and in a room with similar features to the room in the photos depicting Victim 2. Victim 1's face is fully visible in this photo.

- Another post slightly later that consisted of a URL link and the tag "[jailbait]." An undercover FBI agent accessed the link, which redirected to another image of a girl who is fully nude except for a bra strap. Her face is partially visible in the photo and her naked breasts and genital area are fully visible. Her partially visible face and bodily features appear to be the same as Victim 1's.

- Another post a few minutes with text referring to a "teen" known to Defendant Howland, followed by another post that consisted of a URL link and the tag "[jailbait]." Once again, an undercover FBI agent accessed the link, which redirected to an image of a fully nude girl. The girl's face is only partially visible, but her partially visible face and bodily features appear to be the same as Victim 1's.

Victims 1 and 2 are both known to Defendant Howland. Both Victim 1 and Victim 2 identified

themselves in the photos shared over Website and stated that they appear to have been taken while they were undressing in Defendant Howland's apartment. Neither knew they were being filmed. Based on timestamps and other information, Victims 1 and 2 appear to have been a minor at the time of some of the spycam photos and videos.

In October 2020, FBI and HSI agents executed a search warrant at Defendant Howland's residence in Burlington, Vermont where he lived alone. Agents seized multiple electronic devices, including a spy camera or "spycam" disguised as a USB charging block and which contained a micro SD card, as well as a Seagate portable hard drive and a Samsung 960 EVO 1TB hard drive. The Seagate and Samsung hard drives included numerous still images and video recordings apparently produced by a hidden camera in a residential bathroom. Many of these images and videos depict females in various stages of undress as they disrobe. Multiple images and videos depict the subjects partially and fully nude and capture the subjects' exposed breasts and genitals. One of the nude subjects of these photos and videos is similar in appearance to Victim 1, and is consistent in appearance to a photo of a driver's license of Victim 1 which was located in Defendant Howland's Teamgroup L5 3D LITE hard drive. Time stamps on some of the photos and videos of Victim 1 indicate that Victim 1 was under the age of 18 at the time the images and videos were produced. The names of some of these located image and video files indicate their pornographic content—for example, Victim 1's first name and first initial, Victim 2's first initial, and refences to "all nude," "frontal," "tits" or "titties," and "topless."

Again, the United States believes that some or all of this evidence is intrinsic to or inextricably intertwined with the charged conduct, or that it completes and provides context for the United States' presentation of evidence. Even if not, however, it demonstrates that the Defendant has committed other crimes under 18 U.S.C. §§ 2251, 2252, and 2252A, and it will thus be

10

Case 5:20-cr-06007-DGK    Document 212    Filed 09/28/23    Page 10 of 14

admissible under Federal Rule of Evidence 414. It is also admissible under 404(b) because it fundamentally goes to the identity of the individual who controls Alias-2. Specifically, comparing the posts that Alias-2 made to Website A with the identity of Victims 1 and 2 and the location in which the spycam photos were taken make clear that Defendant Howland was behind Alias-2.

### c. Defendant Howland's Additional Involvement With Child Pornography and Child Pornography Websites

A forensic review of Defendant Howland's devices revealed numerous images and videos that depicted child pornography. They also included a program used to access the Network, references to a popular image uploader on the Network containing the word "pedo" and commonly used on child pornography websites, as well as evidence that computers were used to access websites on the Network dedicated to child pornography other than Website A. The devices seized from Defendant Howland's residence also contained references to Alias-2 and other nicknames that included or were highly similar to Alias-2.

The FBI's forensic analysis located at least approximately 234 additional still image files and at least 28 video files containing apparent CSAM on the Seagate 2 TB hard drive separate and apart from the files produced by an apparent hidden camera referenced above. In addition, Defendant Howland's Samsung 960 EVO 1 TB hard drive and Western Digital PC SN520 PCLE 512 GB hard drive included Internet and Tor browser history of those devices, which indicated that the user accessed numerous websites with names indicative of child pornography related content.

In addition, the actual text of Alias-2 suggests that the individual who controls that nickname is attracted to girls with red hair. Defendant Howland's Google Pixel 4A contained a folder titled "Girls," which had photographs of naked girls, some of whom had red hair. Some of the images are possible CP/CSAM. Possible CP/CSAM was also located in file paths indicative of being edited with an app called "PicSay." Additionally, videos with filenames indicating they had been trimmed

11

Case 5:20-cr-06007-DGK   Document 212   Filed 09/28/23   Page 11 of 14

in a video app were located. These videos depicted a girl in a shower and were possible CP/CSAM.

Several images of possible CP/CSAM were also located on Defendant Howland's Google Pixel 3 64GB. These were located in file paths indicating they were from videos played in the VideoLAN (VLC) video app and the PicSayPro photo editing app.

Once again, the United States submits that some or all of this evidence is intrinsic to or inextricably intertwined with the charged conduct, or that it completes and provides context for the United States' presentation of evidence. Even if not, however, it demonstrates that Defendant Howland has committed numerous other crimes under 18 U.S.C. §§ 2251, 2252, and 2252A, and it will thus be admissible under Federal Rule of Evidence 414. It is also admissible under 404(b) because it shows Defendant Howland's knowledge of and familiarity with methods of accessing child pornography websites on the Network and obtaining child pornography. This, in turn, corroborates Defendant Howland's identity as an individual who was involved with Website A. This evidence likewise demonstrates his motive to traffic in child pornography and that doing so was his intent and not the result of a mistake or accident.

### IV. Conclusion

Out of an abundance of caution, the United States has provided notice of its intent to introduce evidence at trial under Federal Rules of Evidence 414 and 404(b).


Respectfully submitted,

          Steven J. Grocki
          Chief, Child Exploitation and Obscenity Section
          U.S. Department of Justice, Criminal Division

By: */s/ Kyle Reynolds*_____

          Kyle P. Reynolds
          Trial Attorney

Authorized to practice under L.R. 83.5(i)
1301 New York Avenue, NW
Washington, DC 20005
Tel: (202) 616-2842
Fax: (202) 514-1793
Kyle.Reynolds@usdoj.gov

Alison D. Dunning
David Luna
Assistant United States Attorneys
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-4289
Telefax: (816) 426-4322

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on September 28, 2023, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

> */s/ Kyle Reynolds*
> Kyle P. Reynolds
> Trial Attorney
> U.S. Department of Justice, Criminal Division